UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LIONEL MCCRAY,                                    :

                 Petitioner,            :            14 Civ. 5983 (PKC) (AJP)

        -against-                    :    **REPORT AND RECOMMENDATION**

HAROLD D. GRAHAM,                              :

             Respondent.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable P. Kevin Castel, United States District Judge:**

      Pro se petitioner Lionel McCray seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction following a jury trial in Supreme Court, New York County, of two counts of second degree burglary and consecutive sentences of seven and a half years imprisonment for each.  (Dkt. No. 1: Pet. at 1-2.)[1]

      McCray asserts that the evidence was legally insufficient to support a finding that the building he burglarized was a "[d]welling" under New York's second degree burglary statute, in violation of his due process rights (Pet. at 5, 16-17), and that his consecutive sentences violated the Fifth and Eighth Amendments to the United States Constitution because he allegedly engaged in a single course of conduct (Pet. at 7, 18-19).

      For the reasons set forth below, McCray's habeas petition should be DENIED.

**FACTS**

**Background**

      On October 6, 2009, at approximately 10:30 p.m., McCray unlawfully entered the

---

[1]    Citations to McCray's habeas petition cite to the page numbers assigned by the ECF system.

employee locker room of the Hilton Times Square Hotel at 234 West 42nd Street in Manhattan and fled upon being discovered.  (Dkt. No. 13: State Record ("State R."): McCray Ct. App. Br. at 4, 9-11; State Ct. App. Br. at 1-2, 11-12.)  Several hours later, at about 1:30 a.m. on October 7, 2009, McCray illegally entered Madame Tussaud's Wax Museum, located in the same building.  (McCray Ct. App.  Br. at 5-6, 12; State Ct. App. Br. at 2, 14-15.)  Shortly after leaving Madame Tussaud's around 4:00 a.m., McCray was arrested while in possession of a hand truck loaded with stolen electronics.  (McCray Ct. App. Br. at 4-5, 15; State Ct. App.  Br. at 18-19.)

**The Trial**

On August 3, 2010, McCray's jury trial before Justice Patricia Nunez commenced. (Dkt. No. 13: Trial Transcript ("Tr.") 344.)

**The Prosecution Case**

**The Building at 234 West 42nd Street**

234 West 42nd Street in Manhattan is a large high rise building that takes up half the block between Seventh and Eighth Avenues.  (Dkt. No. 13: Horniak: Tr. 447, 475; Rainey: Tr. 514, 530-31.)  In October 2009, the building housed the Hilton Times Square Hotel and other businesses, including Madame Tussaud's Wax Museum.  (Horniak: Tr. 445-48, 471, 473-74; Rainey: Tr. 514-15, 534-36; Bagshaw: Tr. 588.)  The Hilton had a ground floor lobby area that ran between its two entrances on 41st and 42nd Streets, a storage room and offices on the second floor, and a main lobby on the fourteenth floor, with 435 guest rooms located on the thirty floors above.  (Horniak: Tr. 445-47, 453, 470-73, 497-98.)  Madame Tussaud's occupied ten floors below the fourteenth floor. (Horniak: Tr. 445-48; Rainey: Tr. 562-63; Bagshaw: Tr. 617.)

Businesses in the building had separate entrances, but were connected internally via shared emergency stairwells.  (Horniak: Tr. 447-48, 470-71, 473-74, 489; Rainey: Tr. 534-36, 540-

41, 543-45; Bagshaw: Tr. 618.)  The Hilton and Madame Tussaud's shared a connection to stairway

D, allowing a person in that stairway potential access to both.  (Horniak: Tr. 470-74, 476-79;

Rainey: Tr. 516, 544-45, 562; Bagshaw: Tr. 618.)  The stairway doors were accessible to the public

from the inside as a means of egress but were kept locked from the outside to prevent unauthorized

access.  (Horniak: Tr. 477-78, 486, 495-96, 512; Rainey: Tr. 516-17, 563-65, 569-71.)  Stairway D

back into the Hilton, however, is not locked.  (Horniak: Tr. 490.)

The building and its tenants had security teams that coordinated with each other.

(Horniak: Tr. 444-45, 449-50, 487; Rainey: Tr. 514-15, 534, 538-39.)  Andre Rainey handled the

building's overnight security.  (Rainey: Tr. 514, 538-39.)  Frank Horniak performed the same role

for the Hilton.  (Horniak: Tr. 444-45, 489.)  The building's security team was responsbile for

securing stairway D and its exit onto 41st Street.  (Horniak: Tr. 512-13; Rainey: Tr. 540, 543-45,

548-49.)

Because the stairways linked multiple businesses, the Hilton had "a concern" about

"people coming in that don't belong."  (Horniak: Tr. 489.)  The Hilton had a motion detector on the

fourteenth floor of stairway D, where the bulk of the hotel began.  (Horniak: Tr. 490-93.)  The

stairway above the fourteenth floor contained additional security cameras.  (Horniak: Tr. 479, 490-

93.)  A person passing by the motion detector would trigger an alarm in the Hilton security office,

where images captured by the surveillance cameras could be reviewed.  (Horniak: Tr. 479, 490-93.)

Madame Tussaud's was aware that entry into the museum via the fire exits was

possible but usually kept the doors locked.  (Bagshaw: Tr. 617-19.)  They also hired an outside

security firm to check that all fire exit doors were secure at the end of each day.  (Bagshaw: Tr. 618-

19.)  A person, however, could enter Madame Tussaud's from stairway D on the fifth floor.

(Bagshaw: Tr. 618-19.)  Once in stairway D, a person could enter the Hilton on the fourteenth floor.

(Horniak: Tr. 490-91.)

### The Burglaries

On October 6, 2009 around 9:30 p.m., Hilton cook Christopher Maine went to the employee locker room.  (Dkt. No. 13: Maine: Tr. 580.)  Before leaving the building, Maine closed and secured his locker.  (Maine: Tr. 580-81.)  Around 10:30 p.m., another Hilton cook, Humberto Yepez, observed a man standing in front of Maine's open locker.  (Yepez: Tr. 573-78.)  When Yepez asked if he was a new employee, McCray left the employee locker room.  (Yepez: Tr. 574-75, 577.)  Yepez found it unusual that Maine's locker would be open, "put two and two together," and reported what had happened to security.  (Yepez: Tr. 575, 578.)  Yepez described the man as a young black man wearing a blue sweater and a hat, weighing about 175 pounds and standing five and half feet tall.  (Yepez: Tr. 577-78.)  Yepez identified McCray at trial as the man he had seen.  (Yepez: Tr. 575-76.)

When Hilton security staff investigated the locker room, they found that the locker had been vandalized and the lock broken.  (Horniak: Tr. 468-69, 481-82.)  Horniak's review of video surveillance footage showed a man wearing jeans, a dark t-shirt and a blue sweatshirt entering the Hilton mezzanine level from emergency stairway E, which ran from the ground floor lobby to the top floor of the Hilton.  (Horniak: Tr. 453-55, 459, 477-79, 483-84.)  After the man entered the mezzanine level, a camera caught him walking through a corridor heading to the employee locker room.  (Horniak: Tr. 453-55, 479-81.)  Several minutes later, the camera showed Yepez approaching the locker room from another direction.  (Horniak: Tr. 455-56.)  Within a minute, the man emerged and returned to stairway E.  (Horniak: Tr. 456-57, 480-81.)  Yepez identified the man in the video footage as the intruder he had confronted.  (Yepez: Tr. 576-79.)  McCray was not a Hilton employee and did not have permission to be in the locker room.  (Horniak: Tr. 444, 453, 460-61, 485.)

Further review of the surveillance videos showed McCray at around 10:45 p.m. walking across the sixteenth floor of the hotel to stairway D, which led to Madame Tussaud's and an exit to 41st Street.  (Horniak: Tr. 458-59, 478-79, 483-84, 487, 490-91.)  The surveillance footage also yielded a snapshot of McCray's face.  (Horniak: Tr. 457-61; Rainey: Tr. 517-18.)  Hilton security, unsure whether McCray had left the building, reported the break-in to Rainey.  (Horniak: Tr. 486-87; Rainey: Tr. 517.)

Around midnight, Madame Tussaud's security manager normally clears the museum of guests.  (Bagshaw: Tr. 590.)  At that point, both the public and employees are barred from the musuem without permission.  (Bagshaw: Tr. 589-93.)  Nobody had permission to enter the building after hours on October 6 or October 7, 2009.  (Bagshaw: Tr. 591-92, 595.)

Around 1:30 a.m. on October 7, 2009, one of Madame Tussaud's security cameras showed McCray entering the fifth floor from stairway D.  (Bagshaw: Tr. 594, 618-19.)  McCray was wearing the same blue sweatshirt as when he was seen in the Hilton.  (Bagshaw: Tr. 598-99.)  For over two hours, multiple cameras caught McCray moving throughout Madame Tussaud's fourth, fifth, seventh, eighth and ninth floors.  (Bagshaw: Tr. 594-608, 618-22.)  These floors included areas not open to the public, such as storage facilities and the "AV control room."  (Bagshaw: Tr. 599-608; Whitely: Tr. 630.)  McCray was not a museum employee and did not have permission to be there after hours.  (Bagshaw: Tr. 591-92, 594-95, 597, 608.)

At approximately 1:45 a.m., a security camera showed McCray in a storage area closed to the public.  (Bagshaw: Tr. 600-02.)  Similarly, at about 2:45 a.m., McCray was caught on camera rummaging through desks in a private office area.  (Bagshaw: Tr. 602-03.)  At about 3:00 a.m., cameras captured McCray pushing a large box across a ninth floor gallery, through a door and through the emergency exit to stairway D.  (Bagshaw: Tr. 595-96.)  At about 3:20 a.m., a camera

caught McCray taking a hand truck from the fifth floor and moving it toward the exit to stairway D.  (Bagshaw: Tr. 601-02.)

Horniak met Rainey outside the Hilton entrance on 41st Street shortly before 4:00 a.m., and gave him a copy of the surveillance photograph of McCray's face.  (Horniak: Tr. 461, 466, 486-87; Rainey: Tr. 517-18.)  Both soon spotted McCray coming out of stairway D's exit onto 41st Street.  (Horniak: Tr. 461-62, 468, 495, 503-06, 509; Rainey: Tr. 517-18.)  They observed McCray wearing a dark colored Yankees cap, jeans and a black shirt, and pushing a hand truck loaded with two boxes that appeared to contain electronic equipment.  (Horniak: Tr. 462, 506-07, 510; Rainey: Tr. 520, 550-52, 555.)

Rainey followed McCray while Horniak remained at the hotel.  (Horniak: Tr. 463-64, 507; Rainey: Tr. 520-24, 528.)  Rainey flagged down a passing police car on Ninth Avenue.  (Rainey: Tr. 524, 557.)  Rainey identified himself, alerted the officer that he suspected McCray had stolen property from the building, and got into the car while the officer drove around the block.  (Rainey: Tr. 524-25, 557-58.)  Rainey spotted McCray and identified him as the person who had stolen items from the building.  (Rainey: Tr. 525-27, 558-59.)

Police arrested McCray and recovered four flat screen televisions, three flat screen computer monitors, a DVR player, a cellular phone, an iPod, and a blue hooded sweatshirt from the boxes and hand truck.  (Gladstone: Tr. 666-69, 686, 688-94.)  The electronics were determined to be missing from Madame Tussaud's.  (Bagshaw: Tr. 591-92, 599, 608-09, 616-17; Whitely: Tr. 625-26; Gladstone: Tr. 688-92.)  While being proceessed at the police station, McCray asked for his sweatshirt back and specified that it was the blue one recovered by police.  (Gladstone: Tr. 675-78, 695.)

### The Defense Case

McCray's counsel called no witnesses, instead making a pro forma motion for a directed verdict, which Justice Nunez denied.  (Dkt. No. 13: Tr. 725-26, 729.)

### The Verdict and Sentence

The jury found McCray guilty of two counts of second degree burglary, one for the burglary of the Hilton and one for the burglary of Madame Tussaud's.  (Dkt. No. 13: Tr. 814-15.)  On September 2, 2010, Justice Nunez sentenced McCray as a second felony offender to two consecutive seven and a half year prison terms.  (Tr. 820-21, 832-33; Dkt. No. 13: State R.: Uniform Sentence & Commitment Order.)

### McCray's Direct Appeal

Represented by counsel, McCray's direct appeal argued that "neither Madame Tussaud's nor the Hilton locker room were 'dwellings'" within the meaning of New York's second-degree burglary statute, and that the imposition of consecutive sentences was illegal under Penal Law § 70.25(2) because McCray "committed a single act of burglary."  (Dkt. No. 13: State R.: McCray 1st Dep't Br. at 11-16, 24-28.)[2]  McCray sought to have his convictions reduced to third degree burglary with concurrent sentences.  (McCray 1st Dep't Br. at 29.)  McCray's direct appeal raised no federal constitutional claims and did not cite any federal case law.  (See generally McCray 1st Dep't Br. at 11-29.)

On January 24, 2013, the First Department affirmed McCray's conviction, holding

---

[2]    Second degree burglary is committed when the defendant "knowingly enters or remains unlawfully in a building with intent to commit a crime therein," and the building is a "dwelling."  Penal Law  § 140.25(2).  A building is a "dwelling" if it is "usually occupied by a person lodging therein at night."  Penal Law § 140.00(3).  Where "a building consists of two or more units separately secured or occupied, each unit shall be deemed both a separate building in itself and a part of the main building."  Penal Law § 140.00(2).

that McCray was properly convicted of two counts of second degree burglary "based on his entries into a hotel's employee locker room and a museum located in the same building as the hotel," because:

> Each location constituted a dwelling within the meaning of the burglary statute.  A building is a dwelling if it is 'usually occupied by a person lodging at night.'  (Penal Law § 140.00[3]).  Where, as here, 'a building consists of two or more units separately secured or occupied, each unit shall be deemed both a separate building in itself and [a] part of the main building' (Penal Law § 140.00[2] . . . ).

People v. McCray, 102 A.D.3d 560, 560, 958 N.Y.S.2d 148, 149 (1st Dep't 2013).  The First Department also held that McCray's consecutive sentences were lawful because McCray "committed two separate and distinct acts of burglary" where his acts "'impacted different victims, were separated by place and were temporally differentiated, though in part overlapping.'" People v. McCray, 102 A.D.3d at 561, 958 N.Y.S.2d at 149.

McCray's Court of Appeals brief again argued that unlawful entry into the public commercial portions of a multi-use high-rise structure is not an entry into a "'dwelling'" under New York's second degree burglary statute (State R.: McCray Ct. App.  Br. at 27-53), and that his consecutive sentences violated Penal Law § 70.25(2) because his continuing conduct was all part of a single criminal scheme (McCray Ct. App. Br. at 54-59).  McCray did not cite any federal cases or raise any federal constitutional challenge to either his second degree burglary convictions or his consecutive sentences.  (See McCray Ct. App.  Br. at 27-59.)

On July 12, 2014, the New York Court of Appeals affirmed the First Department's decision.  People v. McCray, 23 N.Y.3d 621, 992 N.Y.S.2d 475 (2014).  The Court of Appeals framed the issue as "whether a burglary committed in the nonresidential part of a building used partly for residential purposes should be treated as the burglary of a dwelling."  Id. at 624, 992 N.Y.S.2d at 476.  The Court of Appeals held that it should be, based on the "four outer walls, and

under the same roof" rule the Court of Appeals first articulated in 1878 in <u>Quinn</u> v. <u>People</u>.  <u>People</u> v. <u>McCray</u>. 23 N.Y.3d at 626-27, 992 N.Y.S.2d at 477-78 (citing <u>Quinn</u> v. <u>People</u>, 71 N.Y. 561, 573 (1878)).   Under that rule, in general, "burglary of a partly residential building is burglary of a dwelling, even if the burglar enters only the nonresidential part."  <u>People</u> v. <u>McCray</u>, 23 N.Y.3d at 629, 992 N.Y.S.2d at 479.   The Court of Appeals  held that, although a revision to the language of New York's burglary statute in 1881 had nullified the <u>Quinn</u> rule, 1967 amendments to Penal Law § 140.00(2) statutorily revived and codified it.   <u>People</u> v. <u>McCray</u> 23 N.Y.3d at 629, 992 N.Y.S.2d at 479; <u>see also</u>  Penal Law § 140.00(2) ("Where a building consists of two or more units separately secured or occupied, each unit shall be deemed both a separate building in itself and a part of the main building.").  The Court of Appeals, however, further held that Penal Law § 140.00(2) did not eliminate <u>Quinn</u>'s articulation of the "Astor House exception" that "'part of a dwelling-house may be so severed from the rest of it, by being let to a tenant, as to be no longer a place in which burglary in the [second] degree can be committed; if there be no internal communication, and the tenant does not sleep in it.'"  <u>People</u> v. <u>McCray</u>, 23 N.Y.3d at 628, 992 N.Y.S.2d at 478 (quoting <u>Quinn</u> v. <u>People</u>, 71 N.Y. at 573-74).

        The Court of Appeals found that the evidence supporting McCray's burglary convictions–which McCray did not dispute–was legally sufficient to satisfy the definition of a dwelling and therefore to support convictions for second, rather than third, degree burglary.  <u>People</u> v. <u>McCray</u>, 23 N.Y.3d at 625, 630, 992 N.Y.S.2d at 477, 480.  With respect to the Hilton, the Court found that McCray "went from the [Hilton employee] locker room to stairway E, which, the jury could find on this record, provides a means of reaching all floors of the hotel.  He then passed through the 16th floor, which–again drawing reasonable inferences from the record–is adjacent to the floors containing guest rooms, and entered stairway D, which also led to guest room floors."

People v. McCray, 23 N.Y.3d at 630, 992 N.Y.S.2d at 480.  The Court of Appeals had "little hesitation in concluding that the risks inherent in burglary of a dwelling . . . are present when a burglar comes this near to rooms in which people are sleeping."  Id.

With respect to Madame Tussaud's, the Court of Appeals found that the "case is close" as to whether the burglary fit within the general rule or the Astor House exception, noting that "we might well hold that a burglar who entered Madame Tussaud's from the street, and never entered the stairwell it shared with the hotel, committed only third degree burglary."  Id. Nonetheless, the Court of Appeals held that "the jury could find that [McCray] entered the wax museum by coming down stairway D from the hotel, and the jury could also find that he could easily have returned by that route and reentered the hotel at the 14th floor lobby level.  There was evidence that the door on the 14th floor between the hotel and stairway D was not locked from either side, though it was equipped with a motion detector."  Id.  The Court of Appeals reasoned that "[t]hough the burglary was not physically close to the guest rooms of the hotel, the ease of access from one place to another is at least equally important," and that McCray's "unlawful presence in Madame Tussaud's gave him sufficient acces to the hotel's sleeping quarters to make the October 7 burglary the burglary of a dwelling."  Id.  The Court of Appeals therefore affirmed McCray's second degree burglary convictions.  Id.

The Court of Appeals summarily rejected McCray's challenges to his consecutive sentences, stating only that McCray's "claim that he was improperly sentenced lacks merit."  Id.

**McCray's Habeas Petition**

In July 2014, McCray filed his present federal habeas corpus petition pursuant to 28 U.S.C. § 2254.  (Dkt. No. 1: Pet.)  McCray alleged that the evidence underlying his conviction for burglarizing Madame Tussaud's was legally insufficient to support a conviction for second degree

burglary, in violation of his due process rights under the Fifth and Fourteenth Amendments to the United State Constitution because, in his view, Madame Tussaud's was not a "[d]welling." (Pet. at 5, 16-17.) McCray further asserted that his consecutive sentences are "[i]llegal" and violate the Fifth and Eighth Amendments to the Constitution because he allegedly engaged in a single course of conduct. (Pet. at 7, 18-19.)  McCray asked the Court to reduce his convictions to third-degree burglary with concurrent sentences. (Pet. at 15.)

On October 10, 2014, the State responded, arguing that McCray's legal sufficiency of the evidence claim was not cognizable on habeas review because it is "a veiled attack on the New York Court of Appeals' legal interpretation of New York's second-degree burglary statute," and that his federal constitutional claims are "unexhausted, procedurally defaulted, and plainly meritless." (Dkt. No. 12: Ans. ¶ 5(a)-(b); see also Dkt. No. 12: State Br. at 22-31.)

On November 12, 2014, McCray filed a reply affidavit and brief. (Dkt. No. 15: McCray Br.; Dkt. No. 16: McCray Aff.) McCray's brief elaborated upon his theory that the evidence was legally insufficient to support his second degree burglary conviction for the burglary of Madame Tussaud's because Madame Tussaud's does not meet the statutory definition of a dwelling. (McCray Br. at 1-6.) With respect to his consecutive sentences, McCray argued that they violate his double jeopardy rights and are so excessive as to constitute cruel and unusual punishment. (McCray Br. at 6-8.)

## ANALYSIS

### I.  THE AEDPA REVIEW STANDARD

Before the Court can determine whether petitioner is entitled to federal habeas relief, the Court must address the proper habeas corpus review standard under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners." Williams v. Taylor, 529 U.S. 362, 403, 120 S. Ct. 1495, 1518 (2000).  The AEDPA imposed a more stringent review standard, as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[3/]

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." Williams v. Taylor, 529 U.S. at 404-05, 120 S. Ct. at 1519.[4/]  Both, however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence."

---

[3/]   See also, e.g., Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011); Knowles v. Mirzayance, 556 U.S. 111, 121, 129 S. Ct. 1411, 1418 (2009); Evans v. Fischer, 712 F.3d 125, 132 (2d Cir.), cert. denied, 134 S. Ct. 238 (2013); Portalatin v. Graham, 624 F.3d 69, 78-79 (2d Cir. 2010) (en banc), cert. denied, 131 S. Ct. 1691, 1693 (2011); Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005), cert. denied, 547 U.S. 1040, 126 S. Ct. 1622 (2006); Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004); Dallio v. Spitzer, 343 F.3d 553, 559-60 (2d Cir. 2003), cert. denied, 541 U.S. 961, 124 S. Ct. 1713 (2004); Eze v. Senkowski, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the habeas petitions of state prisoners.'" (quoting Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001), cert. denied, 535 U.S. 1019, 122 S. Ct. 1611 (2002))).

[4/]   Accord, e.g., Evans v. Fischer, 712 F.3d at 132-33; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir.), cert. denied, 540 U.S. 1091, 124 S. Ct. 962 (2003); Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000); Lurie v. Wittner, 228 F.3d 113, 125 (2d Cir. 2000), cert. denied, 532 U.S. 943, 121 S. Ct. 1404 (2001); Clark v. Stinson, 214 F.3d 315, 320 (2d Cir. 2000), cert. denied, 531 U.S. 1116, 121 S. Ct. 865 (2001).

Williams v. Taylor, 529 U.S. at 412, 120 S. Ct. at 1523.[5/]  The relevant Supreme Court jurisprudence is that in effect at the time of the state court's adjudication on the merits (in New York, usually the decision of the Appellate Division), not at the time of a subsequent decision (e.g., the New York Court of Appeals) denying leave to appeal.  Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011).

"That federal law, as defined by the Supreme Court, may be either a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d at 42.[6/]  "A petitioner can not

---

[5/]  Accord, e.g., Marshall v. Rodgers, 133 S. Ct. 1446, 1447 (2013) (per curiam); Lafler v. Cooper, 132 S. Ct. 1376, 1390 (2012) ("A decision is contrary to clearly established law if the state court 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases.'"); Howes v. Fields, 132 S. Ct. 1181, 1187 (2012) ("In this context, 'clearly established law' signifies 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'"); Carey v. Musladin, 549 U.S. 70, 77, 127 S. Ct. 649, 654 (2006) ("Given the lack of holdings from this Court regarding [this issue], it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"); Yarborough v. Alvarado, 541 U.S. 652, 661, 124 S. Ct. 2140, 2147 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); Wiggins v. Smith, 539 U.S. 510, 519, 123 S. Ct. 2527, 2534 (2003); Lockyer v. Andrade, 538 U.S. 63, 71, 123 S. Ct. 1166, 1172 (2003) ("Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"); Assadourian v. Brown, 493 F. App'x 223, 225 (2d Cir. 2012) ("[H]abeas relief is only warranted where a state court unreasonably applies clearly established Supreme Court law . . . ."); Portalatin v. Graham, 624 F.3d at 79 ("To qualify as 'clearly established' for the purposes of federal habeas review, a rule of law must be embodied in the 'holdings, as opposed to the dicta,' of Supreme Court precedent."); Georgison v. Donelli, 588 F.3d 145, 153-54 (2d Cir. 2009); Dunlap v. Burge, 583 F.3d 160, 164 (2d Cir.), cert. denied, 558 U.S. 1037, 130 S. Ct. 642 (2009); Hargett v. Giambruno, 291 F. App'x 402, 403 (2d Cir. 2008); Howard v. Walker, 406 F.3d at 122; Tueros v. Greiner, 343 F.3d 587, 591 (2d Cir. 2003), cert. denied, 541 U.S. 1047, 124 S. Ct. 2171 (2004); Yung v. Walker, 341 F.3d 104, 109-10 (2d Cir. 2003); Parsad v. Greiner, 337 F.3d at 181; DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002); Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909, 123 S. Ct. 251 (2002); Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 309 (2d Cir. 2001).

[6/]  Accord, e.g., Marshall v. Rodgers, 133 S. Ct. at 1449 ("[T]he lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established
(continued...)

win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent."  Yung v. Walker, 341 F.3d at 110; accord, e.g., Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) ("[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'  It therefore cannot form the basis for habeas relief under AEDPA."  (citation omitted)); DelValle v. Armstrong, 306 F.3d at 1200.[7]/

> As to the "contrary to" clause:
>
> A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . .  A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

Williams v. Taylor, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[8]/

---

[6]/    (...continued)
federal law, since 'a general standard' from this Court's cases can supply such law."); Davis v. Grant, 532 F.3d 132, 140 (2d Cir. 2008), cert. denied, 555 U.S. 1176, 129 S. Ct. 1312 (2009).

[7]/    See also, e.g., Glebe v. Frost, 135 S. Ct. 429, 431 (2014) ("As we have repeatedly emphasized, however, circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'"); White v. Woodall, 134 S. Ct. 1697, 1702 & n.2 (2014) ("Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions . . . . [A] lower court may not consult its own precedents rather than those of [the Supreme] Court, in assessing a habeas claim governed by § 2254." (quotation omitted)); Marshall v. Rodgers, 133 S. Ct. at 1450-51 ("Although an appellate panel may, in accordance with its usual law-of-the-circuit procedures, look to circuit precedent to ascertain whether it has already held that the particular point in issue is clearly established by Supreme Court precedent, it may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to this Court, be accepted as correct." (citations omitted)).

[8]/    Accord, e.g., Lafler v. Cooper, 132 S. Ct. at 1390; Cullen v. Pinholster, 131 S. Ct. at 1398; Knowles v. Mirzayance, 556 U.S. at 122, 129 S. Ct. at 1419 (The Supreme "Court has held
(continued...)

In <u>Williams</u>, the Supreme Court explained that "[u]nder the 'unreasonable application'
clause, a federal habeas court may grant the writ if the state court identifies the correct governing
legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the
facts of the prisoner's case." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 413, 120 S. Ct. at 1523.[9/]  However,
"[t]he term 'unreasonable' is . . . difficult to define." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 410, 120 S. Ct.
at 1522.  The Supreme Court made clear that "an <u>unreasonable</u> application of federal law is different
from an <u>incorrect</u> application of federal law." <u>Id.</u>[10/]  Rather, the issue is "whether the state court's

---

[8/]     (...continued)
on numerous occasions that it is not 'an unreasonable application of clearly established
federal law' for a state court to decline to apply a specific legal rule that has not been
squarely established by this [Supreme] Court." (quotation omitted)); <u>Brown</u> v. <u>Payton</u>, 544
U.S. 133, 141, 125 S. Ct. 1432, 1438-39 (2005); <u>Bell</u> v. <u>Cone</u>, 543 U.S. 447, 452-53, 125 S.
Ct. 847, 851 (2005); <u>Price</u> v. <u>Vincent</u>, 538 U.S. 634, 640, 123 S. Ct. 1848, 1853 (2003);
<u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 73-74, 123 S. Ct. at 1173-74; <u>Evans</u> v. <u>Fischer</u>, 712 F.3d
at 132; <u>Portalatin</u> v. <u>Graham</u>, 624 F.3d at 79; <u>Bierenbaum</u> v. <u>Graham</u>, 607 F.3d 36, 47-48 (2d
Cir. 2010), <u>cert. denied</u>, 131 S. Ct. 1693 (2011); <u>Ortiz</u> v. <u>N.Y.S. Parole in Bronx, N.Y.</u>, 586
F.3d 149, 156 (2d Cir. 2009), <u>cert. denied</u>, 131 S. Ct. 320 (2010); <u>Dunlap</u> v. <u>Burge</u>, 583 F.3d
at 164; <u>Davis</u> v. <u>Grant</u>, 532 F.3d at 140; <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d 238, 242 (2d Cir.
2006), <u>cert. denied</u>, 549 U.S. 1215, 127 S. Ct. 1267 (2007); <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68;
<u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d 210, 219 (2d Cir.), <u>cert.</u>
<u>denied</u>, 546 U.S. 889, 126 S. Ct. 215 (2005); <u>Tueros</u> v. <u>Greiner</u>, 343 F.3d at 591; <u>Yung</u> v.
<u>Walker</u>, 341 F.3d at 109; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d at 1200; <u>Kennaugh</u> v. <u>Miller</u>, 289
F.3d at 42; <u>Loliscio</u> v. <u>Goord</u>, 263 F.3d at 184; <u>Lurie</u> v. <u>Wittner</u>, 228 F.3d at 127-28.

[9/]     <u>Accord</u>, <u>e.g.</u>, <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1399; <u>Waddington</u> v. <u>Sarausad</u>, 555 U.S.
179, 190, 129 S. Ct. 823, 831 (2009); <u>Brown</u> v. <u>Payton</u>, 544 U.S. at 141, 125 S. Ct. at 1439;
<u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 520, 123 S. Ct. at 2534-35; <u>Evans</u> v. <u>Fischer</u>, 712 F.3d at 133;
<u>Bierenbaum</u> v. <u>Graham</u>, 607 F.3d at 48; <u>Brisco</u> v. <u>Ercole</u>, 565 F.3d 80, 87 (2d Cir.), <u>cert.</u>
<u>denied</u>, 558 U.S. 1063, 130 S. Ct. 739 (2009); <u>Jones</u> v. <u>West</u>, 555 F.3d 90, 96 (2d Cir. 2009);
<u>Davis</u> v. <u>Grant</u>, 532 F.3d at 140; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d 238, 246 (2d Cir. 2006), <u>cert.</u>
<u>denied</u>, 549 U.S. 1257, 127 S. Ct. 1383 (2007); <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Parsad</u>
v. <u>Greiner</u>, 337 F.3d at 181.

[10/]     <u>See also</u>, <u>e.g.</u>, <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1411; <u>Renico</u> v. <u>Lett</u>, 559 U.S. 766, 773,
130 S. Ct. 1855, 1862 (2010); <u>Waddington</u> v. <u>Sarausad</u>, 555 U.S. at 190, 129 S. Ct. at 831;
<u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2150; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S.
<span style="float:right">(continued...)</span>

application of clearly established federal law was objectively unreasonable." <u>Williams</u> v. <u>Taylor</u>,

529 U.S. at 409, 120 S. Ct. at 1521.[11/] "Objectively unreasonable" is different from "clear error."

<u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper

deference to state courts by conflating error (even clear error) with unreasonableness."). This is a

"'substantially higher threshold'" than incorrectness. <u>Renico</u> v. <u>Lett</u>, 559 U.S. at 773, 130 S. Ct. at

1862; <u>accord</u>, <u>e.g.</u>, <u>White</u> v. <u>Woodall</u>, 134 S. Ct. at 1702 ("And an unreasonable application of

---

[10/]        (...continued)
        at 520, 123 S. Ct. at 2535; <u>Price</u> v. <u>Vincent</u>, 538 U.S. at 641, 123 S. Ct. at 1853 ("As we have
        explained: '[A] federal habeas court may not issue the writ simply because that court
        concludes in its independent judgment that the state-court decision applied [a Supreme Court
        case] incorrectly.'" (quoting <u>Woodford</u> v. <u>Visciotti</u>, 537 U.S. 19, 24-25, 123 S. Ct. 357, 360
        (2002))); <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1175; <u>Watson</u> v. <u>Greene</u>, 640
        F.3d 501, 508 (2d Cir.), <u>cert. denied</u>, 132 S. Ct. 335 (2011); <u>Dunlap</u> v. <u>Burge</u>, 583 F.3d at
        165-66 (A "federal court might agree with a petitioner that the relevant federal law should
        have been interpreted differently than the way it was interpreted by the state court yet still
        conclude that the state court's application of the federal law was not unreasonable."); <u>Brisco</u>
        v. <u>Ercole</u>, 565 F.3d at 87-88; <u>Jones</u> v. <u>West</u>, 555 F.3d at 96; <u>Davis</u> v. <u>Grant</u>, 532 F.3d at 140;
        <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d at 243; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246; <u>Henry</u> v. <u>Poole</u>, 409
        F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d at 219; <u>Cox</u> v.
        <u>Donnelly</u>, 387 F.3d at 197; <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d at 124-25; <u>DelValle</u> v. <u>Armstrong</u>,
        306 F.3d at 1200 ("With regard to issues of law, therefore, if the state court's decision was
        not an unreasonable application of, or contrary to, clearly established federal law as defined
        by Section 2254(d), we may not grant habeas relief even if in our judgment its application
        was erroneous.").

[11/]        <u>Accord</u>, <u>e.g.</u>, <u>McDaniel</u> v. <u>Brown</u>, 558 U.S. 120, 132-33, 130 S. Ct. 665, 673 (2010);
        <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2150; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S.
        at 520-21, 123 S. Ct. at 2535; <u>Price</u> v. <u>Vincent</u>, 538 U.S. at 641, 123 S. Ct. at 1853; <u>Lockyer</u>
        v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1174-75; <u>Woodford</u> v. <u>Visciotti</u>, 537 U.S. at 25-27,
        123 S. Ct. at 360-61; <u>Assadourian</u> v. <u>Brown</u>, 493 F. App'x at 224; <u>Watson</u> v. <u>Greene</u>, 640
        F.3d at 508; <u>Portalatin</u> v. <u>Graham</u>, 624 F.3d at 79; <u>Dunlap</u> v. <u>Burge</u>, 583 F.3d at 165; <u>Davis</u>
        v. <u>Grant</u>, 532 F.3d at 140; <u>Mosby</u> v. <u>Senkowski</u>, 470 F.3d 515, 519 (2d Cir. 2006), <u>cert.</u>
        <u>denied</u>, 552 U.S. 836, 128 S. Ct. 75 (2007); <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d at 243; <u>Lynn</u> v.
        <u>Bliden</u>, 443 F.3d at 246; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122;
        <u>Cox</u> v. <u>Donnelly</u>, 387 F.3d at 197; <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d at 125; <u>Ryan</u> v. <u>Miller</u>, 303
        F.3d 231, 245 (2d Cir. 2002); <u>Loliscio</u> v. <u>Goord</u>, 263 F.3d at 184; <u>Lurie</u> v. <u>Wittner</u>, 228 F.3d
        at 128-29.

[Supreme Court] holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." (quotations omitted)); <u>Knowles</u> v. <u>Mirzayance</u>, 556 U.S. at 123, 129 S. Ct. at 1420.[12] Federal habeas relief is precluded "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington</u> v. <u>Richter</u>, 562 U.S. 85, 131 S. Ct. 770, 786 (2011); <u>accord</u>, <u>e.g.</u>, <u>White</u> v. <u>Woodall</u>, 134 S. Ct. at 1702 (A "'state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"); <u>Nevada</u> v. <u>Jackson</u>, 133 S. Ct. 1990, 1992 (2013); <u>Metrish</u> v. <u>Lancaster</u>, 133 S. Ct. 1781, 1786-87 (2013). "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings.'" <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1398 (citations omitted).[13]

"[T]he range of reasonable judgment can depend in part on the nature of the relevant

---

[12] However, the Second Circuit has explained "that while '[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" <u>Jones</u> v. <u>Stinson</u>, 229 F.3d at 119 (quoting <u>Francis S.</u> v. <u>Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000)); <u>accord</u>, <u>e.g.</u>, <u>Cornell</u> v. <u>Kirkpatrick</u>, 665 F.3d 369, 375 (2d Cir. 2011); <u>Brisco</u> v. <u>Ercole</u>, 565 F.3d at 88; <u>Jones</u> v. <u>West</u>, 555 F.3d at 96; <u>Brown</u> v. <u>Alexander</u>, 543 F.3d 94, 100 (2d Cir. 2008) ("[W]e have observed that the 'unreasonable application' standard 'falls somewhere between merely erroneous and unreasonable to all reasonable jurists.'"); <u>Davis</u> v. <u>Grant</u>, 532 F.3d at 140; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d at 219; <u>Cox</u> v. <u>Donnelly</u>, 387 F.3d at 197, 200-01; <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 110; <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d at 125; <u>Ryan</u> v. <u>Miller</u>, 303 F.3d at 245; <u>Loliscio</u> v. <u>Goord</u>, 263 F.3d at 184.

[13] Accord, <u>e.g.</u>, <u>White</u> v. <u>Woodall</u>, 134 S. Ct. at 1702 (AEDPA standard is "difficult to meet" (quotations omitted)); <u>Burt</u> v. <u>Titlow</u>, 134 S. Ct. 10, 16 (2013) ("AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."); <u>Metrish</u>, v. <u>Lancaster</u>, 133 S. Ct. at 1787; <u>Greene</u> v. <u>Fisher</u>, 132 S. Ct. at 43; <u>Jean</u> v. <u>Greene</u>, 532 F. App'x 744, 749 (2d Cir. 2013); <u>Santone</u> v. <u>Fischer</u>, 689 F.3d 138, 147 (2d Cir.), <u>cert. denied</u>, 133 S. Ct. 390 (2012).

rule." <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2149.[14/] "Even if the state court issued a decision 'contrary to' clearly established Supreme Court law, a petitioner 'cannot obtain relief . . . unless application of a <u>correct</u> interpretation of that [Supreme Court] decision leads to the conclusion that his rights were violated.'" <u>Cousin</u> v. <u>Bennett</u>, 511 F.3d 334, 339 (2d Cir.), <u>cert. denied</u>, 553 U.S. 1096, 128 S. Ct. 2910 (2008) (citation omitted).

Under the AEDPA, in short, the federal courts "must give the state court's adjudication a high degree of deference." <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 109; <u>accord</u>, <u>e.g.</u>, <u>Hardy</u> v. <u>Cross</u>, 132 S. Ct. 490, 491 (2011); <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1398; <u>Felkner</u> v. <u>Jackson</u>, 131 S. Ct. 1305, 1307 (2011) (per curiam) ("On federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be

---

[14/]    The Supreme Court explained:

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule.  If a legal rule is specific, the range may be narrow.  Applications of the rule may be plainly correct or incorrect.  Other rules are more general, and their meaning must emerge in application over the course of time.  Applying a general standard to a specific case can demand a substantial element of judgment.  As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

<u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2149; <u>accord</u>, <u>e.g.</u>,<u>White</u> v. <u>Woodall</u>, 134 S. Ct. at 1705-06 (rejecting circuit cases that created an "unreasonable-refusal-to-extend rule"); <u>Nevada</u> v. <u>Jackson</u>, 133 S. Ct. at 1994; <u>Parker</u> v. <u>Matthews</u>, 132 S. Ct. at 2155 ("Particularly because the <u>Darden</u> standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations,' the Sixth Circuit had no warrant to set aside the Kentucky Supreme Court's conclusion." (citation omitted)); <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 786; <u>Renico</u> v. <u>Lett</u>, 559 U.S. at 776, 130 S. Ct. at 1864; <u>Knowles</u> v. <u>Mirzayance</u>, 556 U.S. at 123, 129 S. Ct. at 1420 (Where the Supreme Court "standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."); <u>Watson</u> v. <u>Greene</u>, 640 F.3d at 508-09; <u>Portalatin</u> v. <u>Graham</u>, 624 F.3d at 79; <u>Ortiz</u> v. <u>N.Y.S. Parole in Bronx, N.Y.</u>, 586 F.3d at 157; <u>Dunlap</u> v. <u>Burge</u>, 583 F.3d at 166; <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d at 243.

19

given the benefit of the doubt.'" (citations omitted)).[15/]  "[I]t is the petitioner's burden to demonstrate

that the state court applied the relevant clearly established law to th[e] record in an objectively

unreasonable manner."  Acosta v. Artuz, 575 F.3d 177, 184 (2d Cir. 2009); accord, e.g., Cullen v.

Pinholster, 131 S. Ct. at 1398 ("The petitioner carries the burden of proof."); Georgison v. Donelli,

588 F.3d at 154.  As the Supreme Court explained:

> If this standard is difficult to meet, that is because it was meant to be. . . .
> [§ 2254(d)] preserves authority to issue the writ in cases where there is no possibility
> fairminded jurists could disagree that the state court's decision conflicts with [the
> Supreme] Court's precedents.  It goes no farther. . . . As a condition for obtaining
> habeas corpus from a federal court, a state prisoner must show that the state court's
> ruling on the claim being presented in federal court was so lacking in justification
> that there was an error well understood and comprehended in existing law beyond
> any possibility for fairminded disagreement.

Harrington v. Richter, 131 S. Ct. at 786-87; accord, Burt v. Titlow, 134 S. Ct. at 16.

Even where the state court decision does not specifically refer to either the federal

claim or to relevant federal case law, the deferential AEDPA review standard applies.

> [D]etermining whether a state court's decision resulted from an unreasonable legal
> or factual conclusion does not require that there be an opinion from the state court
> explaining the state court's reasoning.  And as this Court has observed, a state court
> need not cite or even be aware of [Supreme Court] cases under § 2254(d).  Where
> a state court's decision is unaccompanied by an explanation, the habeas petitioner's
> burden still must be met by showing there was no reasonable basis for the state court
> to deny relief.

Harrington v. Richter, 131 S. Ct. at 784 (citations to Sellan v. Kuhlman, 261 F.3d at 312, & other

cases omitted); accord, e.g., Johnson v. Williams, 133 S. Ct. 1088, 1094 (2013); Cullen v.

Pinholster, 131 S. Ct. at 1402; Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853; Early v. Packer, 537

---

[15/]   See also, e.g., Renico v. Lett, 559 U.S. at 773, 130 S. Ct. at 1862; Bell v. Cone, 543 U.S. at
455, 125 S. Ct. at 853; Evans v. Fischer, 712 F.3d at 132 ("We focus on the state appellate
court's decision and, for issues adjudicated on the merits in state court, we apply a 'highly
deferential standard for evaluating state-court rulings.'"); Mosby v. Senkowski, 470 F.3d at
519.

U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (state court not required to cite Supreme Court cases, or even

be aware of them, to be entitled to AEDPA deference, "so long as neither the reasoning nor the result

of the state-court decision contradicts them"); <u>Grayton</u> v. <u>Ercole</u>, 691 F.3d 165, 174 (2d Cir. 2012)

("Where, as here, 'a state court's decision is unaccompanied by an explanation, the habeas

petitioner's burden still must be met by showing there was no reasonable basis for the state court to

deny relief.'"), <u>cert. denied</u>, 134 S. Ct. 79 (2013); <u>Wilson</u> v. <u>Mazzuca</u>, 570 F.3d 490, 499 (2d Cir.

2009) ("Where, as here, 'a state court fails to articulate the rationale underlying its rejection of a

petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on

whether the state court's ultimate decision was an unreasonable application of clearly established

Supreme Court precedent.'").[16] "'[A] habeas court must determine what arguments or theories . . .

could have supporte[d] the state court's decision; and then it must ask whether it is possible

fairminded jurists could disagree that those arguments or theories are inconsistent with the holding

in a prior decision of [the Supreme] Court.'"  <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1402.

      "When a federal claim has been presented to a state court and the state court has

denied relief, it may be presumed that the state court adjudicated the claim on the merits in the

absence of any indication or state-law procedural principles to the contrary."  <u>Harrington</u> v. <u>Richter</u>,

---

[16]    <u>See also</u>, <u>e.g.</u>, <u>Grayton</u> v. <u>Ercole</u>, 691 F.3d at 169-70 & n.3; <u>Wade</u> v. <u>Herbert</u>, 391 F.3d 135, 140, 142 (2d Cir. 2004) (Appellate Division held claim was "'without merit.'"  "Such a summary determination, even absent citation of federal case law, is a determination 'on the merits' and as such requires the deference specified by § 2254."  Moreover, "[i]f any reasonable ground was available [for the state court's decision], we must assume the [state] court relied on it."); <u>Francolino</u> v. <u>Kuhlman</u>, 365 F.3d 137, 141 (2d Cir.) (where "the Appellate Division concluded its opinion by stating that it had 'considered and rejected defendants' remaining claims,'" AEDPA deference applies), <u>cert. denied</u>, 543 U.S. 872, 125 S. Ct. 110 (2004); <u>Jenkins</u> v. <u>Artuz</u>, 294 F.3d 284, 291 (2d Cir. 2002) ("In <u>Sellan</u>, we found that an even more concise Appellate Division disposition-the word 'denied'-triggered AEDPA deference.").

131 S. Ct. at 784-85.

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S. Ct. at 1398; accord, e.g., Ryan v. Gonzales, 133 S. Ct. 696, 708 (2013); Greene v. Fisher, 132 S. Ct. at 44.

Finally, in appropriate circumstances, "[i]f [the] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." Howard v. Walker, 406 F.3d at 122.

In addition to the standard of review of legal issues, the AEDPA provides a deferential review standard for state court factual determinations: "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); accord, e.g., Burt v. Titlow, 134 S. Ct. at 15; Williams v. Ercole, 486 F. App'x 208, 211 (2d Cir.), cert. denied, 133 S. Ct. 635 (2012); Bierenbaum v. Graham, 607 F.3d at 48; Lynn v. Bliden, 443 F.3d at 246-47; Rosa v. McCray, 396 F.3d at 220.  "The petitioner bears the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'"  Parsad v. Greiner, 337 F.3d at 181 (quoting § 2254(e)(1)); accord, e.g., Burt v. Titlow, 134 S. Ct. at 15; Williams v. Ercole, 486 F. App'x at 211; Bierenbaum v. Graham, 607 F.3d at 48 ("A state court's determination of a factual issue is presumed to be correct, and may only be rebutted by clear and convincing evidence."); Brown v. Alexander, 543 F.3d at 100; Lynn v. Bliden, 443 F.3d at 246-47.

## II.    MCCRAY'S CLAIMS ARE UNEXHAUSTED, BUT DEEMED EXHAUSTED AND PROCEDURALLY BARRED

### A.    The Exhaustion Doctrine

Section 2254 codifies the exhaustion requirement, providing that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court

shall not be granted unless it appears that -- (A) the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).[17]  As the Supreme Court has made clear, "[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." Rose v. Lundy, 455 U.S. at 518, 102 S. Ct. at 1203; accord, e.g., O'Sullivan v. Boerckel,  526 U.S. at 845, 119 S. Ct. at 1732.

The Second Circuit determines whether a claim has been exhausted by applying a two-step analysis:

> First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts. . . . Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim.

Diaz v. Coombe, 97 Civ. 1621, 1997 WL 529608 at *3 (S.D.N.Y. June 12, 1997) (Mukasey, D.J. & Peck, M.J.) (quoting Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981)); accord, e.g., O'Sullivan v. Boerckel, 526 U.S. at 843-48, 119 S. Ct. at 1732-34.

"The exhaustion requirement is not satisfied unless the federal claim has been 'fairly

---

[17]  See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999); Rose v. Lundy, 455 U.S. 509, 515-16, 102 S. Ct. 1198, 1201 (1982) ("The exhaustion doctrine existed long before its codification by Congress in 1948" in 28 U.S.C. § 2254.); Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971); Abuzaid v. Mattox, 726 F.3d 311, 321 (2d Cir. 2013) ("§ 2254(b)(1)(A) prohibits federal courts from granting relief to an applicant who has not 'exhausted the remedies available in the courts of the State.' 28 U.S.C. § 2254(b)(1)(A) (1996).  But § 2254(b)(2) authorized federal courts to deny the petition, regardless of whether the applicant exhausted his state court remedies."); Jimenez v. Walker, 458 F.3d 130, 148 (2d Cir. 2006), cert. denied, 549 U.S. 1133, 127 S. Ct. 976 (2007); Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054, 115 S. Ct. 1436 (1995); Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990); Daye v. Attorney Gen., 696 F.2d 186, 190-94 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048, 104 S. Ct. 723 (1984).

presented' to the state courts." <u>Daye</u> v. <u>Attorney Gen.</u>, 696 F.2d at 191.[18/]  The Second Circuit has

held that a federal habeas petitioner must have alerted the state appellate court that a federal

constitutional claim is at issue.  <u>E.g.</u>, <u>Cox</u> v. <u>Miller</u>, 296 F.3d at 99; <u>Jones</u> v. <u>Vacco</u>, 126 F.3d at 413-

14; <u>Grady</u> v. <u>LeFevre</u>, 846 F.2d 862, 864 (2d Cir. 1988); <u>Petrucelli</u> v. <u>Coombe</u>, 735 F.2d 684, 688-

89 (2d Cir. 1984); <u>Daye</u> v. <u>Attorney Gen.</u>, 696 F.2d at 191.  In <u>Daye</u>, the Second Circuit en banc

stated:

> [T]he ways in which a state defendant may fairly present to the state courts the
> constitutional nature of his claim, even without citing chapter and verse of the
> Constitution, include (a) reliance on pertinent federal cases employing constitutional
> analysis, (b) reliance on state cases employing constitutional analysis in like fact
> situations, (c) assertion of the claim in terms so particular as to call to mind a specific
> right protected by the Constitution, and (d) allegation of a pattern of facts that is well
> within the mainstream of constitutional litigation.

<u>Daye</u> v. <u>Attorney Gen.</u>, 696 F.2d at 194.[19/]

The Supreme Court has confirmed the long-held view of the Second Circuit that "a

state prisoner must present his claims to a state supreme [<u>i.e.</u>, highest] court in a petition for

discretionary review in order to satisfy the exhaustion requirement."  <u>O'Sullivan</u> v. <u>Boerckel</u>, 526

---

[18/]  <u>Accord</u>, <u>e.g.</u>, <u>O'Sullivan</u> v. <u>Boerckel</u>, 526 U.S. at 844, 119 S. Ct. at 1732; <u>Picard</u> v. <u>Connor</u>, 404 U.S. at 275-76, 92 S. Ct. at 512; <u>Jones</u> v. <u>Keane</u>, 329 F.3d 290, 294-95 (2d Cir.), <u>cert. denied</u>, 540 U.S. 1046, 124 S. Ct. 804 (2003); <u>Cox</u> v. <u>Miller</u>, 296 F.3d 89, 99 (2d Cir. 2002), <u>cert. denied</u>, 537 U.S. 1192, 123 S. Ct. 1273 (2003); <u>Jones</u> v. <u>Vacco</u>, 126 F.3d 408, 413 (2d Cir. 1997).

[19/]  <u>Accord</u>, <u>e.g.</u>, <u>Smith</u> v. <u>Duncan</u>, 411 F.3d 340, 348 (2d Cir. 2005); <u>Jackson</u> v. <u>Edwards</u>, 404 F.3d 612, 618 (2d Cir. 2005); <u>Rosa</u> v. <u>McCray</u>, 396 F.3d 210, 217-18 (2d Cir.), <u>cert. denied</u>, 546 U.S. 889, 126 S. Ct. 215 (2005); <u>St. Helen</u> v. <u>Senkowski</u>, 374 F.3d 181, 182-83 (2d Cir. 2004), <u>cert. denied</u>, 543 U.S. 1058, 125 S. Ct. 871 (2005); <u>Cox</u> v. <u>Miller</u>, 296 F.3d at 99; <u>Ramirez</u> v. <u>Attorney Gen.</u>, 280 F.3d 87, 95 (2d Cir. 2001); <u>Levine</u> v. <u>Comm'r of Corr. Servs.</u>, 44 F.3d 121, 124 (2d Cir. 1995), <u>cert. denied</u>, 520 U.S. 1106, 117 S. Ct. 1112 (1997); <u>Grady</u> v. <u>LeFevre</u>, 846 F.2d at 864; <u>Garofolo</u> v. <u>Coomb</u>, 804 F.2d 201, 206 (2d Cir. 1986); <u>Petrucelli</u> v. <u>Coombe</u>, 735 F.2d at 688.

U.S. at 839-40, 119 S. Ct. at 1730.[20/]

### B.   **Application to McCray's Claims**

McCray argues that his conviction for second degree burglary of Madame Tussaud's violates his due process rights because, he alleges, the evidence was legally insufficient to support a finding that Madame Tussaud's was a dwelling within the meaning of New York's burglary statute. (Dkt. No. 1: Pet. at 5,16-17.)  Similarly, McCray asserts that his consecutive sentences violate the Fifth and Eighth Amendments to the United States Consitution.  (Pet. at 7, 18-19.)  McCray claims to have raised these arguments during his state court appellate process.  (Pet. at 6-8; see also Dkt. No. 16: McCray Aff. at 3 ¶¶ 2-3.)

The record, however, shows that before both the New York Court of Appeals and the First Department, McCray did not frame any of his arguments in constitutional terms.  (See pages 7-8 above.)  Instead, McCray argued only that Madame Tussaud's does not qualify as a dwelling under New York law, and similarly that  his consecutive sentences violated New York law.  (See pages 7-8 above.)  At no stage during the state appellate process did McCray raise any federal constitutional claims, cite to federal case law, or make any reference to federal rights.  (See pages

---

[20/]   Accord, e.g., Rosa v. McCray, 396 F.3d at 217; Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir.), cert. denied, 544 U.S. 1025, 125 S. Ct. 1996 (2005); Calderon v. Keane, 115 F. App'x 455, 457 (2d Cir. 2004); Cotto v. Herbert, 331 F.3d 217, 237 (2d Cir. 2003); Ramirez v. Attorney Gen., 280 F.3d at 94; Jordan v. LeFevre, 206 F.3d 196, 198 (2d Cir. 2000); Morgan v. Bennett, 204 F.3d 360, 369 (2d Cir.), cert. denied, 531 U.S. 819, 121 S. Ct. 59 (2000); Bossett v. Walker, 41 F.3d at 828 ("To fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims 'to the highest court of the pertinent state.'"); Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991) ("a petitioner must present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition"); Pesina v. Johnson, 913 F.2d at 54 ("We have held that the exhaustion requirement mandates that federal claims be presented to the highest court of the pertinent state before a federal court may consider the petition," citing Daye); Daye v. Attorney Gen., 696 F.2d at 191 n.3 ("Exhaustion of available state remedies requires presentation of the claim to the highest state court from which a decision can be had.").

7-8 above.)  His habeas claims therefore are unexhausted.

"'For exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."'"  <u>Reyes</u> v. <u>Keane</u>, 118 F.3d 136, 139 (2d Cir. 1997) (quoting <u>Grey</u> v. <u>Hoke</u>, 933 F.2d 117, 120 (2d Cir. 1991) (quoting <u>Harris</u> v. <u>Reed</u>, 489 U.S. 255, 263 n.9, 109 S. Ct. 1038, 1043 n.9 (1989))).[21/]  "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)."  <u>Grey</u> v. <u>Hoke</u>, 933 F.2d at 120.  Consequently, such procedurally barred claims are "deemed exhausted" by the federal courts.  <u>E.g.</u>, <u>St. Helen</u> v. <u>Senkowski</u>, 374 F.3d at 183; <u>DiGuglielmo</u> v. <u>Smith</u>, 366 F.3d at 135; <u>McKethan</u> v. <u>Mantello</u>, 292 F.3d at 122-23; <u>Ramirez</u> v. <u>Attorney Gen.</u>, 280 F.3d at 94; <u>Reyes</u> v. <u>Keane</u>, 118 F.3d at 139; <u>Bossett</u> v. <u>Walker</u>, 41 F.3d at 828; <u>Washington</u> v. <u>James</u>, 996 F.2d 1442, 1446-47 (2d Cir. 1993), <u>cert. denied</u>, 510 U.S. 1078, 114 S. Ct. 895 (1994); <u>Grey</u> v. <u>Hoke</u>, 933 F.2d at 120-21.

Accordingly, because McCray did not include these federal claims in his direct appeal, and McCray cannot now appeal to the First Department or the New York Court of Appeals,

---

[21/]    <u>Accord</u>, <u>e.g.</u>, <u>Castille</u> v. <u>Peoples</u>, 489 U.S. 346, 350, 109 S. Ct. 1056, 1059 (1989) ("It would be inconsistent with [§ 2254(b)], as well as with underlying principles of comity, to mandate recourse to state collateral review whose results have effectively been predetermined . . . ."); <u>St. Helen</u> v. <u>Senkowski</u>, 374 F.3d 181, 183 (2d Cir. 2004) ("[E]ven if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it has become procedurally barred under state law."), <u>cert. denied</u>, 543 U.S. 1058, 125 S. Ct. 871 (2005); <u>DiGuglielmo</u> v. <u>Smith</u>, 366 F.3d 130, 135 (2d Cir. 2004) (petitioner's procedurally defaulted claims deemed exhausted where he could no longer obtain state-court review because of his procedural default); <u>McKethan</u> v. <u>Mantello</u>, 292 F.3d 119, 122-23 (2d Cir. 2002) (claims deemed exhausted where they were "procedurally barred for not having been raised in a timely fashion"); <u>Ramirez</u> v. <u>Attorney Gen.</u>, 280 F.3d 87, 94 (2d Cir. 2001); <u>Bossett</u> v. <u>Walker</u>, 41 F.3d 825, 828 (2d Cir. 1994) ("[I]f the petitioner no longer has 'remedies available' in the state courts under 28 U.S.C. § 2254(b), we deem the claims exhausted."), <u>cert. denied</u>, 514 U.S. 1054, 115 S. Ct. 1436 (1995).

McCray's claims are unexhausted, but deemed exhausted and procedurally barred.  Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001) ("Petitioner was entitled to one (and only one) appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals . . . ."); see, e.g., Jimenez v. Walker, 458 F.3d 130, 149 (2d Cir. 2006), cert. denied, 549 U.S. 1133, 127 S. Ct. 976 (2007); O'Kane v. Kirkpatrick, 09 Civ. 5167, 2011 WL 3809945 at *8 (S.D.N.Y. Feb. 15, 2011) ("A defendant is entitled to only one direct appeal."), report & rec. adopted, 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011); Eduardo v. Smith, 10 Civ. 0622, 2010 WL 5584599 at *3 (S.D.N.Y. Jan. 11, 2010) ("Petitioner is foreclosed now from raising these issues in state court, since he is entitled to only one appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals.").

## III.   MCCRAY'S SUFFICIENCY OF THE EVIDENCE CLAIM SHOULD BE DENIED

In any event, even if McCray's sufficiency of the evidence claim were not procedurally barred, it is without merit.

### A.   Legal Principles Governing Sufficiency of the Evidence Claims

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" Jackson v. Virginia, 443 U.S. 307, 315, 99 S. Ct. 2781, 2787 (1979) (quoting In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970)).  However, "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. at 317, 99 S. Ct. at 2788.  Accordingly, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254-if the settled procedural prerequisites for such a claim have otherwise been satisfied-the applicant is entitled to habeas corpus relief if it is found that upon the record evidence

adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable

doubt." Jackson v. Virginia, 443 U.S. at 324, 99 S. Ct. at 2791-92.

> The petitioner bears a very heavy burden:
>
> > [T]he standard for appellate review of an insufficiency claim placed a "very heavy burden" on the appellant.  Our inquiry is whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt.  In making this determination, we must view the evidence in the light most favorable to the government and construe all permissible inferences in its favor.

United States v. Carson, 702 F.2d 351, 361 (2d Cir.) (citations omitted), cert. denied, 462 U.S. 1108,

103 S. Ct. 2456, 2457 (1983).

> The habeas court's review of the jury's findings is limited:
>
> > [T]his inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

Jackson v. Virginia, 443 U.S. at 318-19, 99 S. Ct. at 2789 (citations omitted).

> The Jackson v. Virginia "standard must be applied with explicit reference to the

substantive elements of the criminal offense as defined by state law." Jackson v. Virginia, 443 U.S.

at 324 n.16, 99 S. Ct. at 2792 n.16.[22/]

> The AEDPA further limits this Court's role in determining sufficiency of the evidence

---

[22/]   Accord, e.g., Gutierrez v. Smith, 702 F.3d 103, 113 (2d Cir. 2012), cert. denied, 134 S. Ct. 439 (2013); Langston v. Smith, 630 F.3d 310, 314 (2d Cir.), cert. denied, 132 S. Ct. 366 (2011); Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999), cert. denied, 528 U.S. 1170, 120 S. Ct. 1196 (2000); Green v. Abrams, 984 F.2d 41, 44-45 (2d Cir. 1993) ("In considering a petition for writ of habeas corpus based on insufficient evidence to support a criminal conviction in the state courts, a federal court must look to state law to determine the elements of the crime.").

habeas petitions.  As the Supreme Court made clear, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"  Cavazos v. Smith, 132 S. Ct. 2, 4 (2011).  Thus, habeas corpus review of a sufficiency of the evidence challenge uses a "doubly deferential standard of review."  Epps v. Poole, 687 F.3d 46, 50 (2d Cir. 2012), cert. denied, 133 S. Ct. 1499 (2013); see, e.g., Santone v. Fischer, 689 F.3d 138, 154 (2d Cir.), cert. denied, 133 S. Ct. 390 (2012); Jones v. LaValley, 11 Civ. 6178, 2014 WL 1377589 at *14 (S.D.N.Y. Apr. 3, 2014) (Peck, M.J.); Garcia v. Smith, No. 11-CV-1332, 2014 WL 905544 at *13 (E.D.N.Y. Mar. 7, 2014).  As the Second Circuit explained,

> We review collateral challenges to the sufficiency of the evidence supporting a state-court jury's verdict under a doubly deferential standard of review.  First, even on direct review, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'  Second, if the state courts have rejected the defendant's constitutional arguments on the merits, a federal court may not grant the writ of habeas corpus unless the state courts' decision was based on 'an unreasonable application of [] clearly established Federal law.'  Thus, where the state courts have denied a claim of insufficient evidence on the merits, we may not grant the writ unless we conclude that no reasonable court could have held that any reasonable jury could have read the evidence to establish petitioner's guilt beyond a reasonable doubt.

Garbutt v. Conway, 668 F.3d 79, 81 (2d Cir.) (per curiam) (citations omitted), cert. denied, 133 S. Ct. 311 (2012).[23/]

**B.    Application to McCray's Claim**

McCray does not argue that there was insufficient evidence at trial to convict him of

---

[23/]    See also, e.g., United States v. Harvey, 746 F.3d 87, 88 (2d Cir. 2014) (per curiam); United States v. Clark, 740 F.3d 808, 811 (2d Cir. 2014); Serrata v. Fischer, 13 Civ. 2632, 2013 WL 5708599 at *10 (S.D.N.Y. Oct. 21, 2013); Nunez v. Conway, 923 F. Supp. 2d 557, 564 (S.D.N.Y. 2013); Gonzalez v. Perez, 11 Civ. 3744, 2012 WL 2952841 at *2-3 (S.D.N.Y. July 19, 2012).

burglary; he admits to third degree burglary.  (Dkt. No. 1: Pet. at 5, 15.)  Instead, McCray contends that his conviction for second degree burglary of Madame Tussaud's violates his Fifth and Fourteenth Amendment due process rights because, in his view, Madame Tussaud's is not a dwelling.  (Pet. at 5, 16-17.)

Viewing the evidence in the light most favorable to the prosecution, a jury could have found beyond a reasonable doubt that McCray committed second degree burglary.  Second degree burglary requires the jury to find that the building burglarized was a "dwelling."  Penal Law § 140.25(2); see page 7 n.2 above.  A building is a "'dwelling'" if it is "usually occupied by a person lodging therein at night."  Penal Law § 140.00(3); see page 7 n.2 above.  There can be no question that the Hilton, with 435 guest rooms, was a dwelling.  (See page 2 above.)  Moreover, where "a building consists of two or more units separately secured or occupied, each unit shall be deemed both a separate building in itself and part of the main building."  Penal Law § 140.00(2); see page 7 n.2 above.

To the extent that McCray argues that Madame Tussaud's could not have qualified as a dwelling under New York law, such claim is unavailing.  The Supreme Court has "stated many times that 'federal habeas corpus relief does not lie for errors of state law'" unless they are so arbitrary and capricious as to constitute an independent constitutional violation.  Estelle v. McGuire, 502 U.S. 62, 68, 112 S. Ct. 475, 480 (1991); Lewis v. Jeffers, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102 (1990) ("Because federal habeas corpus relief does not lie for errors of state law, federal habeas review of a state court's application of a constitutionally narrowed aggravating circumstance is limited, at most, to determining whether the state court's finding was so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation.") (citations omitted); see also, e.g., Brown v. Conway, 483 Fed App'x 593, 594 (2d. Cir. 2012), cert denied., 133 S. Ct. 543

(2012).

Here, there was no error of state law, much less one so arbitrary and capricious as to constitute an independent constitutional violation. McCray's argument depends upon the "Astor House exception" to Penal Law § 140.00(2) which applies when, in multi-tenant buildings, "the burglar neither comes nor readily can come near to anyone's living quarters." People v. McCray 23 N.Y.3d 621, 628, 992 N.Y.S.2d 475, 479 (2014); see also Quinn v. People, 71 N.Y. 561, 573-74 (1878) ("[A] part of a dwelling-house may be so severed from the rest of it, by being let to a tenant, as to be no longer a place in which burglary in the [second] degree can be committed; if there be no internal communication . . . ."). McCray asserts that the "Trial Jurors had no knowledge of the Astor House exception" and that the Court of Appeals "endorsed the Astor House exception standard but unreasonably contradicted [its] own rule by declaring [Madame Tussaud's] a human habitation." (Pet. at 16.) McCray further asserts that because stairway D was an "egress only 'Fire escape' or 'Emergency exit' . . . designed mainly as a way out in an emergency. . . . [I]t should be within reasonable determination of the fact that once one is within stairway D [reentry] will not be possible through said stairway except out the main building." (Dkt. No. 15: McCray Br. at 5.)

The Astor House exception applies only where the burglar neither comes near nor readily could come near anyone's living quarters within a building. People v. McCray, 23 N.Y.3d at 628, 992 N.Y.S.2d at 479. That inquiry is context-specific and depends upon both the physical proximity of the burglar to living quarters and the burglar's ease of access. See People v. McCray, 23 N.Y.3d at 630, 992 N.Y.S.2d at 480 ("[T]he ease of access from one place to another is at least equally important."); accord, e.g., Freeman v. Brown, 10 Civ. 996, 2014 WL 3427298 at *12 n.24 (S.D.N.Y. July 14, 2014) ("[McCray] illustrates that the 'dwelling' issue is context-specific under state law."). Here, although Madame Tussaud's is a separate unit from the Hilton and occupied

different floors, the testimony at trial established that it was connected to the Hilton by stairway D, which was not locked.  (See pages 2-3, 5 above.)  McCray offered no evidence to the contrary and did not attempt to do so at trial or on appeal.  (See pages 7-8 above.)  While McCray now argues that since stairway D was an "'emergency exit'" or fire escape, once in stairway D reentry to the Hilton would not be possible (McCray Br. at 5), this argument was not raised to the First Department or the Court of Appeals (see pages 7-8 above), and the evidence was to the contrary; as the New York Court of Appeals correctly found, entry to and from stairway D to the Hilton was possible, as the door was not locked, only alarmed.  (See pages 3, 10 above.)

Moreover, McCray has identified no legal authority to support his argument that the Astor House exception should apply simply because stairway D was intended for emergency egress, and no such authority exists. The plain language of Penal Law § 140.00(2) does not refer to any exception.  See Penal Law § 140.00(2) ("Where a building consists of two or more units separately secured or occupied, each unit shall be deemed both a separate building in itself and a part of the main building.").  Prior to McCray's own appeal, the Court of Appeals had not addressed the question of whether a burglary in the nonresidential part of a building used partly for residential purposes is a burglary of a dwelling since it decided Quinn v. People in 1878.  People v. McCray, 23 N.Y.3d at 624, 992 N.Y.S.2d at 476 ("We last confronted this question long ago, in Quinn v. People.").[24]  In examining the history of how New York's burglary statutes have defined a dwelling,

_____

[24]    In 1998, the Court of Appeals addressed the related question of "whether a 'dwelling' has been burglarized if a person wrongfully enters the first floor offices of a school, where a fifth floor school office contains a bed that is used for an occasional overnight stay." People v. Quattlebaum, 91 N.Y.2d 744, 745-46, 675 N.Y.S.2d 585, 585 (1998). The Court of Appeals held that "such a building is not a dwelling within the definition of second degree burglary," because "neither the building as a whole nor the fifth floor office" had the "customary indicia of a residence and its character or attributes," and its use for overnight stays was "too
(continued...)

the Court of Appeals found that the New York state legislature's 1967 changes to § 140.00(2) revived the general rule that "burglary of a partly residential building is burglary of a dwelling, even if the burglar enters only the nonresidential part" but also preserved the Astor House exception despite the lack of any overt reference to any exception in the language of the statute.  People v. McCray, 23 N.Y.3d  at 629, 992 N.Y.S. at 479 (post-1967 language of Penal Law § 140.00(2) does not "remov[e] the limitation that the Quinn court placed on its own holding" even though intended to revive Quinn's general holding).

Neither the Court of Appeals' decision in McCray's appeal nor its decision in Quinn v. People, however, suggest that the possibility a stairway might be locked or intended for emergency exit is sufficient to trigger the exception.  See People v. McCray 23 N.Y.3d  at 630, 992 N.Y.S. at 480; Quinn v. People, 71 N.Y. at 573-74 ("The rule is, that a part of a dwelling-house may be so severed from the rest of it, by being let to a tenant, as to be no longer a place in which burglary in the [second] degree can be committed; if there be no internal communication, and the tenant does not sleep in it." (emphasis added)); see also, e.g., People v. Johnson, 162 A.D.2d 267, 268, 556 N.Y.2d 870, 871 (1st Dep't) (citing Quinn v. People, 71 N.Y. at 565-68, to support holding that sufficient evidence existed to support second degree burglary conviction for burglary of music store on ground floor of building with separate residential units above), appeal denied, 76 N.Y.2d 894, 561 N.Y.S.2d 556 (1990).  And in any event, the fact that stairway D was not locked and allowed access between Madame Tussaud's and the Hilton's fourteenth floor (see pages 3, 5 above) removes any issue.  McCray therefore has failed to demonstrate any error of state law, much less any federal constitutional violation.

---

[24]/    (...continued)
        infrequent, without more, to be usual."  Id. at 746, 748-49, 675  N.Y.S.2d at 585, 587.

Accordingly, McCray's insufficient evidence habeas claim should be <u>DENIED</u>.

## IV.   **MCCRAY'S CONSECUTIVE SENTENCE CLAIMS SHOULD BE DENIED**

McCray attacks his consecutive sentences as allegedly violative of the Fifth and Eighth Amendments.  (<u>See</u> Dkt. No. 1: Pet. at 7, 18-19.)  Those are procedurally barred, but in any event are without merit.

### A.   **McCray's Fifth Amendment Claim is Without Merit**

McCray asserts that "[b]oth counts of the Indictment charged the same overlapping violation of the Burglary Statute" and that the State "never Justified their legality for ordering consecutive punishment without being able to prove separate and distinct act[s]."  (Dkt. No. 1: Pet. at 18-19.)  McCray further asserts that the "[d]ouble jeopardy clause prohibits double punishment for a single continuing criminal scheme that violates the same section of the law and is punishable accordingly."  (Dkt No. 15: McCray Br. at 6.)

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V. This prohibition applies to state prosecutions through the Fourteenth Amendment.  <u>Benton</u> v. <u>Maryland</u>, 395 U.S. 784, 794, 89 S. Ct. 2056, 2062 (1969).[25/]  The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for

---

[25/]   Accord, <u>e.g.</u>, <u>Monge</u> v. <u>California</u>, 524 U.S. 721, 727, 118 S. Ct. 2246, 2250 (1998); <u>North Carolina</u> v. <u>Pearce</u>, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076 (1969), <u>overruled on other grounds</u>, <u>Alabama</u> v. <u>Smith</u>, 490 U.S. 794, 109 S. Ct. 2201 (1989); <u>Skinner</u> v. <u>Duncan</u>, 01 Civ. 6656, 2003 WL 21386032 at *28 & n.42 (S.D.N.Y. June 17, 2003) (Peck, M.J.) (& cases cited therein).

the same offense." North Carolina v. Pearce, 395 U.S. at 717, 89 S. Ct. at 2076 (fns. omitted).[26/]

"With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 459 U.S. 359, 366, 103 S. Ct. 673, 678 (1983). The Supreme Court in Hunter concluded that even where cumulative punishment (as opposed to concurrent) is imposed for the "same" conduct, the only double jeopardy issue is whether the legislature intended that result:

> Our analysis and reasoning in Whalen and Albernaz lead inescapably to the conclusion that simply because two criminal statutes may be construed to proscribe the same conduct under the Blockburger test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes. The rule of statutory construction noted in Whalen is not a constitutional rule requiring courts to negate clearly expressed legislative intent. Thus far, we have utilized that rule only to limit a federal court's power to impose convictions and punishments when the will of Congress is not clear. Here, the [state] Legislature has made its intent crystal clear. Legislatures, not courts, prescribe the scope of punishments.

> Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under Blockburger, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

Missouri v. Hunter, 459 U.S. at 368-69, 103 S. Ct. at 679 (fn. omitted).

---

[26/]   Accord, e.g., Monge v. California, 524 U.S. at 727-28, 118 S. Ct. at 2250; Ohio v. Johnson, 467 U.S. 493, 498, 104 S. Ct. 2536, 2540 (1984); Brown v. Ohio, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); United States v. Weingarten, 713 F.3d 704, 708 (2d Cir. 2013); United States v. Basciano, 599 F.3d 184, 196 (2d Cir. 2010); United States v. McCourty, 562 F.3d 458, 472 (2d Cir.), cert. denied, 558 U.S. 1100, 130 S. Ct. 1012 (2009); United States v. Dionisio, 503 F.3d 78, 79 (2d Cir. 2007), cert. denied, 555 U.S. 825, 129 S. Ct. 158 (2008); Boyd v. Meachum, 77 F.3d 60, 63 (2d Cir.), cert. denied, 519 U.S. 838, 117 S. Ct. 114 (1996); United States v. LoRusso, 695 F.2d 45, 53 (2d Cir. 1982), cert. denied, 460 U.S. 1070, 103 S. Ct. 1525 (1983); Skinner v. Duncan, 2003 WL 21386032 at *28.

New York Penal Law § 70.25(2) provides:

> When more than one sentence of imprisonment is imposed on a person for two or
> more offenses committed through a single act or omission, or through an act or
> omission which in itself constituted one of the offenses and also was a material
> element of the other, the sentences . . . must run concurrently.

N.Y. Penal Law § 70.25(2).[27]

"Conversely, a judge possesses discretionary consecutive sentencing authority if neither circumstance exists.  And even '[i]f the statutory elements do overlap under either prong of [section 70.25(2)], the People may yet establish the legality of consecutive sentencing by showing that the "acts or omissions" committed by defendant were separate and distinct acts.'"  People v. McKnight, 16 N.Y.3d at 48, 917 N.Y.S.2d at 597; accord, e.g., People v. Brown, 80 N.Y.2d 361, 364, 590 N.Y.S.2d 422, 424 (1992) ("[T]rial courts retain consecutive sentence discretion when separate offenses are committed through separate acts, though they are part of a single transaction." (collecting cases)); see, e.g., McCullough v. Bennett, 413 F.3d 244, 248 (2d Cir. 2005) (noting that the New York Court of Appeals "stated generally that consecutive sentences may be imposed even though 'separate acts' are 'part of a single transaction,'" and "separate offenses" may be distinguished by, inter alia, "'time'" and "'place'").

New York's burglary statutes penalize individual acts of entering or remaining unlawfully in a building as separate and distinct, while expressly deeming multiple, separately secured units within a larger building each a "separate building in itself."  Penal Law § 140.25; Penal Law § 140.00(2) ("Where a building consists of two or more units separately secured or occupied,

---

[27]   See also, e.g., People v. McKnight, 16 N.Y.3d 43, 48, 917 N.Y.S.2d 594, 597 (2010) ("If the act or omission is the same for both offenses (under the first prong of section 70.25[2]), or if the act or omission that constitutes one offense is a material element of another offense (under the second prong of section 70.25[2]), then consecutive sentences may not be imposed.").

each unit shall be deemed both a separate building in itself and part of the main building."); see, e.g.,

People v. Wade, 118 A.D.3d 1370, 1371, 988 N.Y.S.2d 351, 353 (4th Dep't) ("Here, there was

evidence . . . from which the jury could have concluded that defendant entered the victims' home,

stole property including sunglasses and a wallet, and then exited the home.  The circumstantial

evidence also permitted the jury to conclude that, at another point in time, defendant entered a

different part of that home and stole other property.  Thus, defendant was properly charged with two

separate counts of burglary in the second degree."), appeal denied, 24 N.Y.3d 965 (2014); People v.

Olson, 116 A.D.3d 427, 427, 982 N.Y.S.2d 760, 760 (1st Dep't) ("The record establishes that

defendant made successive unlawful entries into two places, each constituting a separate and distinct

'building' under the definition contained in Penal Law § 140.00(2), and thus committed two separate

crimes."), appeal denied, 23 N.Y.3d 1066, 994 N.Y.S.2d 325 (2014); People v. Felder, 2 A.D.3d

365, 365, 769 N.Y.S.2d 539, 540 (1st Dep't 2003) ("Defendant's conviction of two counts of

burglary does not violate principles of double jeopardy.  Defendant entered a secured area of a

department store, returned to the public part of the store, and then entered another separately secured

and occupied area.  This constituted entry into two separate 'buildings' for purposes of the burglary

statute . . . ."), appeal denied, 2 N.Y.3d 799, 781 N.Y.S.2d 298 (2004).

        The evidence adduced at trial supported the jury's finding that McCray committed

two distinct acts of unlawfully entering a building.  The testimony of Yepez and Horniak established

that McCray entered the Hilton unlawfully, while the testimony of Bagshaw established that McCray

entered Madame Tussaud's unlawfully.  (See pages 4-5 above.)

        During summation, the prosecutor repeatedly emphasized that McCray had

committed two separate and distinct acts of burglary, both temporally and by entering two separate

areas within one larger building:

[A.D.A.] LEET: . . .  And remember that as you consider all the evidence for all of the occurrences that happened on October 6th and October 7th of 2009 . . . .  Let's talk about first October 6th of 2009 at approximately 10:22 p.m.  That charge, the first charge you are going to be charged on is about the incident that happened inside the Hilton Hotel.

. . . .

That is how you know this defendant committed Burglary in the Second Degree on October 6th, 2009 at approximately 10:20 in the evening.  When he snuck in to the locker room hiding his identity, got caught and fled . . . .

So now let's talk about the second count.  The second count that you are going to be asked to consider is another count of Burglary in the Second Degree. Tha[t] is for what happened on October 7th in the early morning hours from approximately 1:30 a.m. until approximately 4:00 in the morning inside of Madam[e] Tussaud's.

Remember Madam[e] Tussaud's and the Hilton Hotel are the same building and that is important.  Listen to the Judge when she charges you the on the definition of building.  Because  the Judge will explain what it is we mean by a building, what it is when a building has more than one area that are separate from each other but part of that larger building.

That means that each of those areas is one part of a larger building and each of those areas is a building on to itself.

(Summation: Tr. 766, 770-71.)

Justice Nunez made clear during the jury charge that each unit within a building consisting of more than one unit was to be considered a separate building in itself.  (Jury Charge: Tr. 801 ("Where a building consists of two or more units, separately secured or occupied, each unit shall be deemed both a separate building in itself and a part of the main building.").)  Justice Nunez further specified that the first burglary count referred to a crime committed on October 6, 2009, while the second referred to a crime committed on October 7, 2009.  (Jury Charge: Tr. 800, 802.) Likewise, when the jury returned its verdict, it clearly found McCray guilty of two separate counts of burglary.  (Verdict: Tr. 814-15.)

On direct appeal, the First Department held:  "The court's imposition of consecutive sentences was lawful.  Defendant committed two separate and distinct acts of burglary because his acts 'impacted different victims, were separated by place and were temporally differentiated, though in part overlapping.'"  People v. McCray 102 A.D.3d 560, 560-61, 958 N.Y.S.2d 148, 149 (1st Dep't 2013); see page 8 above.  The Court of Appeals summarily affirmed McCray's consecutive sentences.  People v. McCray, 23 N.Y.3d 621, 630, 992 N.Y.S.2d 475, 480 (2014).

The state courts' rulings are supported by New York law and do not provide a basis for habeas relief.  See, e.g., Knoesel v. Duncan, No. 03-CV-2792, 2006 WL 2524198 at *15-16, 22 (E.D.N.Y. Aug. 30, 2006) ("Petitioner's third . . . ground[] for relief raise[s] issues as to whether the evidence adduced at trial was sufficient to prove petitioner's guilt of a second count of burglary in the second degree . . . under New York State law.  Specifically, petitioner's third ground asserts that proof that petitioner twice entered [the victim's] apartment in the course of looting the apartment after the murder was insufficient to prove petitioner's guilt of two counts of burglary in the second degree under New York Penal Law § 140.25(2) because both entries occurred during 'one continuing transaction.' . . . [This argument is based] on State law. Indeed, in his appellate brief, petitioner not only fails to cite any federal constitutional provisions or federal caselaw, but expressly refers to State law in advancing [this ground] for relief. . . . The handful of exclusively State cases on which petitioner relied in [this point] interpreted the New York State statutes at issue, and did not employ federal constitutional analysis. Thus, the claim[] asserted called to mind State law issues and the facts alleged in support of [the argument] were not 'well within the mainstream of constitutional litigation.' . . . [T]his Court cannot review the merits of petitioner's third . . . ground[] for habeas relief. Even if it could, this Court would not find that . . . the third . . . ground alleges a violation of petitioner's federal constitutional rights or any basis for granting federal habeas relief.") (citations

omitted)); Smith v. Walsh, 02 Civ. 5755, 2003 WL 21649485 at *1-3, 8-9 (S.D.N.Y. July 14, 2003) (sufficient evidence existed to uphold petitioner's conviction on second count of burglary in case where first count and second counts were based on petitioner's breaking into different rooms of same hotel on same date).

        McCray's double jeopardy claim therefore should be DENIED as meritless.

## B.      McCray's Eighth Amendment Claim is Not Cognizable

        McCray further argues that the trial court's imposition of consecutive sentences "was grossly disproportionate for the offense that formed the predicate for such enhanced punishment." (Dkt. No. 1: Pet. at 18.)

        McCray's excessive punishment claim is not cognizable on habeas review. An excessive sentence claim does not provide a basis for habeas relief, because "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992).[28/]

        Justice Nunez found McCray to be a second felony offender and sentenced him to

---

[28/]     Accord, e.g., Stallings v. Heath, 11 Civ. 4894, 2012 WL 735399 at *18 (S.D.N.Y. Mar. 7, 2012) (Peck, M.J.), report & rec. adopted, 2012 WL 1538513 (S.D.N.Y. May 2, 2012); Smith v. Hulihan, 11 Civ. 2948, 2011 WL 4058764 at *19 (S.D.N.Y. Sep. 13, 2011) (Peck, M.J.), report & rec. adopted, 2012 WL 4928904 (S.D.N.Y. Oct. 17, 2012); Black v. Conway, 11 Civ. 0480, 2011 WL 2610530 at *12 (S.D.N.Y. June 30, 2011) (Peck, M.J.), report & rec. adopted, 2012 WL 6629050 (S.D.N.Y. Dec. 20, 2012); Robinson v. Smith, 09 Civ. 8222, 2011 WL 1849093 at *27 (S.D.N.Y. May 17, 2011) (Peck, M.J.), report & rec. adopted, 2011 WL 3163466 (S.D.N.Y. July 26, 2011); Jackson v. Lee, 10 Civ. 3062, 2010 WL 4628013 at *44 (S.D.N.Y. Nov. 16, 2010), report & rec. adopted, 2010 WL 5094415 (S.D.N.Y. Dec. 10, 2010); Garcia v. Rivera, 07 Civ. 2535, 2007 WL 2325928 at *17 & n.18 (S.D.N.Y. Aug. 16, 2007) (Peck, M.J.) (& cases cited therein); see, e.g., Thomas v. Senkowski, 968 F. Supp. 953, 956 (S.D.N.Y. 1997) ("It is well established that, when a sentence falls within the range prescribed by state law, the length of the sentence may not be raised as grounds for federal habeas relief."); see also, e.g., Townsend v. Burke, 334 U.S. 736, 741, 68 S. Ct. 1252, 1255 (1948) (severity of sentence generally not reviewable on habeas).

40

consecutive prison terms of seven and a half years for each count of second degree burglary. (See page 7 above.)  Second degree burglary is a class C violent felony.  Penal Law §§ 140.25, 70.02(1)(b).  For a second felony offender, the statutory sentence for a class C violent felony is a term of at least five years and not more than fifteen years imprisonment.  Penal Law § 70.06(6)(b).

Because McCray's sentence is within the statutory range, it is not reviewable on federal habeas corpus as excessive.  Accordingly, McCray's Eighth Amendment claim should be DENIED.

### CONCLUSION [29]

For the reasons discussed above, McCray's petition for habeas corpus should be DENIED in its entirety, and a certificate of appealability should not be issued.[30]

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable P. Kevin Castel, 500 Pearl Street, Room 1020, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Castel (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Ingram v.

---

[29]  If McCray requires copies of any of the cases reported only in Westlaw, he should request copies from the State's counsel.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009); SDNY-EDNY Local Civil Rule 7.2.

[30]  In light of this conclusion, McCray's request for the Court to appoint pro bono counsel (Dkt. No. 17) is denied.

41

Herrick, 475 F. App'x 793, 793 (2d Cir. 2012); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d

1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Frank v. Johnson, 968

F.2d 298, 300 (2d Cir. 1992), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of

Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55,

57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:      New York, New York
            December 3, 2014

                        Respectfully submitted,

                        _____
                        **Andrew J. Peck**
                        United States Magistrate Judge

Copies:     Lionel McCray (Mail)
            Counsel (ECF)
            Judge P. Kevin Castel